UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | LA CV11-05871 JAK (JCx) | Date | May 9, 2013 |
|---|---|---|---|
| Title | Eddie L. Cressy v. OM Financial Life Insurance Company, et al. | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Andrea Keifer | | Not Reported |
| Deputy Clerk | | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:** (IN CHAMBERS) ORDER RE:

DEFENDANT FIDELITY & GUARANTY LIFE INSURANCE COMPANY'S MOTION TO REVIEW AND OBJECTIONS TO MAGISTRATE JUDGE'S JULY 10, 2012 ORDER (DKT. 110)

DEFENDANT PARAMOUNT FINANCIAL SERVICES INC. AND DOUGLAS ANDREW'S MOTION TO REVIEW OBJECTIONS TO MAGISTRATE JUDGE'S MODIFIED TENTATIVE RULING (DKT. 111)

DEFENDANT FIDELITY & GUARANTY LIFE INSURANCE COMPANY'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT (DKT. 117)

DEFENDANT PARAMOUNT FINANCIAL SERVICES INC. AND DOUGLAS ANDREW'S MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE (DKT. 118)

I.  **Introduction**

Eddie L. Cressy ("Plaintiff") brings this putative class action against Defendants OM Financial Life Insurance Company ("OM Financial"); Ogan Financial Group, Inc. ("Ogan Financial"); Paramount Financial Services, Inc. ("Paramount"); Douglas Andrew ("Andrew"); and Kenneth R. Ogan, Jr. ("Ogan") (collectively, "Defendants"). Plaintiff alleges that each of these Defendants participated in a fraudulent scheme to induce homeowners to use the equity in their homes to secure loans to be used for the purchase of what Defendants knew to be unnecessary and underperforming life insurance policies. Compl. ¶¶ 1-2, Dkt. 1. Plaintiff contends that he refinanced his home to borrow $240,000, which is its full equity value, by entering into a 30-year interest-only loan. *Id.* at ¶¶ 47-48. He further alleges that he did so to invest the borrowed funds in a $1,196,000 life insurance policy. *Id.*

The operative Second Amended Complaint[1] ("SAC," Dkt. 103) advances the following causes of action:

---

[1] The Court previously granted motions to dismiss the Complaint (Dkt. 69) and the First Amended Complaint (Dkt. 97).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV11-05871 JAK (JCx) | Date | May 9, 2013 |
|---|---|---|---|
| Title | Eddie L. Cressy v. OM Financial Life Insurance Company, et al. | | |

(i) civil violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c); (ii) conspiracy to violate civil RICO, 18 U.S.C. § 1962(d); (iii) unlawful, unfair and fraudulent business practices pursuant to California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200; (iv) unfair, deceptive and misleading advertising, Cal. Bus. & Prof. Code § 17500; (v) breach of fiduciary duty; and (vi) fraud.

Defendants filed motions to dismiss the Second Amended Complaint (the "Motions," Dkt. 117, 118). Defendants also filed motions for review of Magistrate Judge Chooljian's order (Dkt. 101), which denied a stay of discovery pending appellate review of the Court's denial (Dkt. 80, 82) of the special anti-SLAPP motion to strike (the "Motions for Review," Dkt. 110, 111).

The Court held a hearing on these matters on October 15, 2012. Dkt. 131. The Court requested supplemental briefing on certain issues, including, *inter alia*, whether the federal and state standards for the identified bases for tolling were different. *Id.* Parties timely filed the supplemental briefing. Dkt. 133, 134. On March 4, 2013, Plaintiff filed a Notice of Intervening Authority. Dkt. 139. Defendants filed Motions to Strike Plaintiff's Notice (the "Motions to Strike"). Dkt. 140, 141.

For the reasons stated in this Order, the Court GRANTS the Motions IN PART, *i.e.*, grants the Motions as to the RICO causes of action with prejudice. The RICO causes of action form the basis for federal jurisdiction. The Court declines to exercise supplemental jurisdiction over the remaining causes of action. Accordingly, the Court DISMISSES the remaining causes of action, without prejudice, but, to ensure that these claims are deemed pending for purposes of any statute of limitations issues that may later be raised, STAYS the effect of this Order until the earlier of the re-filing of these claims in an appropriate Superior Court, or 60 days after the entry of this Order. In light of these rulings, the Motions for Review and the Motions to Strike are MOOT.

II.     **Analysis**

    A.     **Statute of Limitations**

Plaintiff obtained the policy on February 16, 2007. SAC ¶ 66. Plaintiff filed this action on July 18, 2011. Compl., Dkt. 1. Thus, this action was filed more than four years after Plaintiff obtained the policy. The Court previously concluded that Plaintiff's causes of action, including those brought under RICO, are all subject to three or four-year limitations periods and were time-barred on the face of Plaintiff's original complaint. Dkt. 69. Therefore, to survive, there would have to be a basis for a claim that the applicable statutes of limitation were tolled for some time period. *Id.*

Plaintiff's First Amended Complaint ("FAC") has presented three bases for why this action is not time-barred: (i) the discovery rule; (ii) fraudulent concealment; and (iii) the continuing violations doctrine. The Court found that Plaintiff's First Amended Complaint (Dkt. 67) did not sufficiently allege a basis for tolling. Dkt. 97.

At the October 15, 2012 hearing, the Court raised the issue whether the same or different rules applied to the application of these doctrines to a RICO claim and the claims that arise under state law. Dkt. 131. The parties filed supplemental briefing on this issue. Dkt. 133, 134. Both sides acknowledged certain

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV11-05871 JAK (JCx) | Date | May 9, 2013 |
|---|---|---|---|
| Title | Eddie L. Cressy v. OM Financial Life Insurance Company, et al. | | |

differences between the application of these principles under RICO and state law, *e.g.*, regarding whether the existence of a fiduciary duty was a relevant consideration or whether a continuing acts doctrine was a basis for tolling under RICO. However, each side also argued that the application of either the federal or state law standard produced a favorable result to that side.

    1.    <u>RICO Causes of Action</u>

        a)    Discovery Rule

"[A] civil RICO cause of action arises when the plaintiff knows or should know that she has been injured." *Grimmett v. Brown*, 75 F.3d 506, 512 (9th Cir. 1996). "[C]onstructive notice begins to run the statute of limitations regardless of any fiduciary relationship between the injured and the injurer." *Pincay v. Andrews*, 238 F.3d 1106, 1109 (9th Cir. 2001). "The plaintiff is deemed to have had constructive knowledge if it had enough information to warrant an investigation which, if reasonably diligent, would have led to discovery of the fraud." *Id.* at 1110. "It is hard to imagine what would constitute enough information to warrant an investigation if receiving a written disclosure of one's purported injury does not." *Id.* (internal quotation omitted) ("Indeed, in *Volk*, [816 F.2d 1406, 1412 (9th Cir. 1987),] we held, as a matter of law, that receiving written disclosure of the possibility of injury was sufficient to put a civil RICO plaintiff on constructive notice of his injury.").

        b)    Fraudulent Concealment

"The doctrine of fraudulent concealment is invoked only if the plaintiff both pleads and proves that the defendant actively misled her, and that she had neither actual nor constructive knowledge of the facts constituting [her] cause of action despite her due diligence." *Grimmett*, 75 F.3d at 514 (emphasis omitted). When a plaintiff "had available all the facts necessary to discover her cause of action with due diligence," "[t]he limitations period does not toll simply because a party is ignorant of her cause of action." *Id.* at 515. If a plaintiff had constructive notice of his or her injuries, as a matter of law, a plaintiff cannot use the doctrine of fraudulent concealment. *Pincay*, 238 F.3d at 1110 ("[Plaintiffs] cannot prevail on their fraudulent concealment claim in this case because there is a long line of our cases holding that, in order to prevail on such a claim, plaintiffs must demonstrate that they had *neither actual nor constructive notice* of the facts constituting their claims for relief.").

        c)    Continuing Violations

Plaintiff's supplemental brief does not contend that the continuing violations doctrine applies to the RICO claims. Dkt. 134 at 2-6, 12 n.3. Rather, it states that "[f]ederal courts do not recognize a continuing acts doctrine for RICO claims per se, but rather apply the 'separate accrual' rule," citing *Grimmett,* 75 F.3d at 510,[2] and contends that the RICO claims were not barred due to the lack of

---

[2] The Supreme Court explained the rule:

> Similarly, some Circuits have adopted a "separate accrual" rule in civil RICO cases, under which the commission of a separable, new predicate act within a 4–year limitations period permits a plaintiff to recover for the additional damages caused by that act. But, as in the antitrust cases, the plaintiff cannot use an independent, new predicate act as a bootstrap to recover for injuries

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV11-05871 JAK (JCx) | Date | May 9, 2013 |
|---|---|---|---|
| Title | Eddie L. Cressy v. OM Financial Life Insurance Company, et al. | | |

constructive notice and alleged fraudulent concealment by Defendants. *See id.* He does not contend that his claims accrued within four years of the filing of this action, and were he to make such a contention, it would be unpersuasive. *Grimmett* reaffirmed that the standard for a new overt act that would support a separate claim for resulting injuries had two elements: "1) It must be a *new and independent act* that is not merely a reaffirmation of a previous act; and 2) It must *inflict new and accumulating injury* on the plaintiff." 75 F.3d at 513 (quoting *Pace Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234, 238 (9th Cir. 1987)). Here, Plaintiff obtained only one policy. Although he continued to make premium payments on the policy, he did so pursuant to the same policy and based on the same alleged misrepresentations that had caused him to obtain the policy. These allegations do not bring the claims within the separate accrual doctrine.

        d)        Application

Whether Plaintiff's RICO claims are time-barred turns solely on whether Plaintiff was on constructive notice of the injury that underlies his causes of action. If Plaintiff had constructive notice of his injury, he cannot seek shelter under the discovery rule or the fraudulent concealment doctrine. *Pincay*, 238 F.3d at 1110.

Plaintiff contends that he was told that "the life insurance policy was a safe, liquid, and suitable investment that would earn a good rate of return." SAC ¶ 59. Plaintiff also contends that he was told "this investment strategy was 'liquid' and funds could be withdrawn for any purpose if he chose to do so." *Id.* at ¶ 61. Plaintiff alleges he was provided with the policy, which is attached to the SAC as Exh. C. *Id.* at ¶ 67. Plaintiff signed a statement of receipt of the policy on February 21, 2007. *Id.*, Exh. C at 53. Plaintiff alleges that he "reviewed the documents to the best of his ability and saw nothing that alarmed him or led him to believe that the investment plan was anything other than what it had been represented to be." *Id.* at ¶ 67. Plaintiff alleges that, in August of 2010, he "discovered information from third parties on the internet which called into question" his investment plan. *Id.* at ¶ 79. He also contends that, on September 22, 2010, he attended a financial seminar at his church that increased his suspicions because the speaker noted that life insurance should never be purchased as an investment. *Id.*

There are several instances in which the allegations of the SAC are in conflict with the statements in the written policy or in other materials provided to Plaintiff before he obtained the policy. Accordingly, Plaintiff was in a position to have discovered these conflicts when he received the policy. For example, there are at least four separate allegations in the SAC that representations were made to Plaintiff that the policy was a liquid investment. *Id.* at ¶¶ 42, 53, 59, 61. However, the policy states on the first page, in capital letters, that "CANCELLATION MAY RESULT IN A SUBSTANTIAL PENALTY KNOWN AS A SURRENDER CHARGE." *Id.*, Exh. C at 3. After the first year, a policy holder could borrow against the policy in the amount of the surrender value, but interest rates would be charged and a loan could be delayed for six months. *Id.*, Exh. C at 25. Similarly, the policy could be surrendered, but the

---

      caused by other earlier predicate acts that took place outside the limitations period. *See, e.g.*,
      *Grimmett*, 75 F.3d, at 512–514 . . . .

*Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 190 (1997).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | LA CV11-05871 JAK (JCx) | Date | May 9, 2013 |
|---|---|---|---|
| Title | Eddie L. Cressy v. OM Financial Life Insurance Company, et al. | | |

corresponding payment to the insured could be delayed for six months. *Id.*, Exh. C at 26-27. Defendants also have pointed to a copy of a chart that was provided to Plaintiff along with the policy materials, which was also attached to the SAC. The chart explains the policy, and lists the projected future premiums as well as the surrender value for each future year, under both a guaranteed and non-guaranteed model. *Id.*, Exh. B at 33. Further, the policy refers to a $60,752.00 annual premium. *Id.*, Exh. C at 5. There were also two no-lapse premium options given and right under those figures, in capital letters, stating that "AT THE END OF THE MINIMUM NO-LAPSE PERIOD, THE GUARANTEED CERTIFICATE VALUES MAY BE INSUFFICIENT TO KEEP THE CERTIFICATE IN EFFECT UNLESS ADDITIONAL PREMIUM IS PAID AT THAT TIME." *Id.*

Plaintiff contends that the inconsistencies between the allegations of the SAC and these written disclosures do not provide a basis to establish constructive knowledge. This position is not persuasive for three principal reasons.

*First*, Plaintiff identifies other materials that were provided to him that are consistent with the allegations of the SAC and do not match the terms of the policy. These materials provide further support for a showing of constructive knowledge. Thus, inconsistencies in the written materials provided to Plaintiff are examples of the types of information from which constructive knowledge of potential fraud may be inferred. *See Volk*, 816 F.2d at 1416 ("Once appellants had clear knowledge of their claims [based on statements in annual report], it was not reasonable for them to rely on reassuring comments from a broker.").

*Second*, Plaintiff identifies a set of allegations, such as the representation that Plaintiff was sold an investment as part of an overall plan, which are not contradicted by the terms of the policy. This does not change the fact that there were inconsistencies in other areas. As noted, Plaintiff need only have "enough information to warrant an investigation which, if reasonably diligent, would have led to discovery of the fraud," and "written disclosure of the possibility of injury [i]s sufficient." *Pincay*, 238 F.3d at 1110.

*Third*, Defendants have identified clear inconsistencies between what Plaintiff alleges he was told and the written terms of the policy. Plaintiff's response to these inconsistencies largely disregards the allegations of the SAC. For example, the SAC alleges that the life insurance was misrepresented as "a liquid investment" and that Plaintiff was told "this investment strategy was 'liquid' and funds could be withdrawn for any purpose if he chose to do so." SAC ¶¶ 42, 61. In contrast, Plaintiff's response contends that the misrepresentations about liquidity did not concern the operation of the life insurance policy; instead he contends that they were about the increased liquidity that would be provided through investing in the policy amounts taken from home equity rather than leaving that equity in his home. Dkt. 134-1 at 8 ("The investment plan's concept of liquidity focuses mainly on the liquidity of home equity and purports to increase the liquidity of the home equity by 'optimizing the assets' through putting the money into the life insurance investment. With the funds 'contributed' to the insurance investment plan, the funds become more liquid.") Plaintiff cannot now disclaim all allegations of fraud for which the policy would have put him on constructive notice.

The SAC alleges that Plaintiff was injured because he followed the advice of certain Defendants. It goes on to allege that, as a result, "instead of an approximate $135,000 mortgage and $15,000 in short-term debts, he now has a $240,000, 30-year interest only mortgage to pay off, [and] a One Million One

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | LA CV11-05871 JAK (JCx) | Date | May 9, 2013 |
|---|---|---|---|
| Title | Eddie L. Cressy v. OM Financial Life Insurance Company, et al. | | |

Hundred Ninety Six Thousand-dollar ($1,196,000) life insurance policy which he did not, and does not need." SAC ¶ 65. The SAC also alleges that "Mr. Cressy has paid $94,258.51 into the policy. His surrender value at the commencement of this action was approximately $65,722.72." *Id.* at ¶ 73. However, the terms of the policy, and the statements in the other materials provided to Plaintiff with the policy, clearly indicate that these financial outcomes could occur. *Id.*, Exh. B, C. Therefore, there is a basis upon which the Plaintiff was put on notice of the claimed fraud; the possibility of these identified injuries was disclosed in writing. In sum, Plaintiff contends that this policy was not an appropriate investment vehicle for him due to his particular financial circumstances. But, the terms of the policy were disclosed and Plaintiff knew his own financial circumstances. Therefore, Plaintiff had all the facts that were necessary to permit him, through the exercise of reasonable diligence, to discover the alleged fraud.

For these reasons, Plaintiff was on constructive notice of the alleged fraud upon his receipt of the policy. Therefore, neither the discovery rule nor fraudulent concealment can serve to toll the statute of limitations with respect to his RICO claims. Because the materials attached to the SAC show that Plaintiff could not amend to change the effect of the statute of limitations, especially given that Plaintiff has had three opportunities to plead his claims, the RICO claims are time-barred and are dismissed with prejudice.

## B.    Supplemental Jurisdiction

### 1.    Legal Standard

Where a "district court has dismissed all claims over which it has original jurisdiction," the court "may decline to exercise supplemental jurisdiction." 28 U.S.C. § 1367(c)(3). The Court's decision should be guided by the values of "economy, convenience, fairness, and comity." *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001, *supplemented*, 121 F.3d 714 (9th Cir. 1997). When federal claims are dismissed before trial, supplemental "state claims also should be dismissed." *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 367-68 (9th Cir. 1992); *see also O'Connor v. Nevada*, 27 F.3d 357, 363 (9th Cir. 1994) ("[I]n the usual case in which federal-law claims are eliminated before trial, the balance of the factors of economy, convenience, fairness, and comity will point toward declining to exercise jurisdiction over the remaining state-law claims.").

### 2.    Application

The RICO claims are the only ones presented in the SAC over which there is original, federal jurisdiction. They have been dismissed. Accordingly, this presents the "usual" case where the four factors of economy, convenience, fairness, and comity point towards declining to exercise jurisdiction.

In evaluating the potential retention of jurisdiction, two considerations have particular significance. *First*, were the Court to decline supplemental jurisdiction, there would be no prejudice to either party. Plaintiff may pursue these claims in the Superior Court pursuant to 28 U.S.C. § 1367(d); further, the Court will stay the effect of this Order for 60 days to ensure that Plaintiff has ample time to re-file the action while this one remains pending. Similarly, Defendant has been on notice of these claims as a result of this action, and will not be prejudiced by defending them in the Superior Court. Defendant FG

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV11-05871 JAK (JCx) | Date | May 9, 2013 |
|---|---|---|---|
| Title | Eddie L. Cressy v. OM Financial Life Insurance Company, et al. | | |

Life has stated that it agrees that any discovery conducted in this action may be used in a Superior Court proceeding.

*Second*, for the reasons discussed at the October 15, 2012 hearing and in the Court's Minute Order (Dkt. 131 at 2), although the Court makes no determination on this issue, different issues appear to be presented with respect to the timeliness of the state law causes of action brought in the SAC. Accordingly, it is more appropriate for these issues to be addressed in the state courts. Thus, it is appropriate to defer to the California courts on this issue.

For these reasons, the Court declines to exercise jurisdiction over the state law claims for fraud, breach of fiduciary duty, violation of § 17200, and violation of § 17500. These claims are dismissed without prejudice to their being re-filed in the Superior Court.[3] The Court stays the effect of this Order until the earlier of the re-filing of this action in the Superior Court or 60 days from the entry of this Order.

### III.     Conclusion

For the foregoing reasons, the Court GRANTS the Motions as to the RICO causes of action with prejudice. The Court declines to exercise supplemental jurisdiction over the remaining state law claims and DISMISSES them without prejudice to their being re-filed in the Superior Court under the terms stated above. All other pending Motions are MOOT.[4] Defendants are directed to submit a proposed judgment within 10 days of the issuance of this Order. Plaintiff shall file any objections to the proposed judgment within 7 days of the filing of the proposed judgment.

**IT IS SO ORDERED.**

                                                                                                              :
                                                                  Initials of Preparer     ak

---

[3] Since the Motions were filed, the California Supreme Court has decided *Aryeh v. Canon Business Solutions, Inc.*, 55 Cal. 4th 1185 (2013), which addresses certain tolling issues with respect to a claim brought under Cal. Bus. and Prof. Code § 17200. However, the Court does not address the effect of this case on the statute of limitations issues for the reasons stated above. In light of this deference, the Motion to Strike Plaintiff's Notice of Intervening Authority, Dkt. 140, is MOOT.

[4] Because this action will be closed as a result of this Order, the Motions for Review which concern the denial of a stay of discovery pending the appeal of the Special Motion to Strike, are MOOT.